IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

NO. 4:11-CR-4-FL

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | |
| | ) | ORDER |
| DELVON DONTE MASSENBERG, | ) | |
| | ) | |
| Defendant. | ) | |

This matter comes before the court on defendant's motion to suppress (DE # 20), which was referred to Magistrate Judge James E. Gates to conduct an evidentiary hearing and provide a memorandum and recommendation ("M&R") (DE # 38). The magistrate judge recommends that the court deny the motion. Defendant objected, and the government timely responded. In this posture, the issues raised now are ripe for adjudication. For the reasons set forth below, the court adopts the magistrate judge's recommendation, and denies defendant's motion to suppress.

### STATEMENT OF THE CASE

On January 26, 2011, defendant was indicted for possessing a firearm after sustaining a felony conviction, in violation of 18 U.S.C. §§ 922(g)(1) and 924. The firearm in question was discovered during a search of a car driven by defendant, following a traffic stop initiated by Joseph Puhak ("Puhak"), then an officer with the Roanoke Rapids Police Department.

On March 16, 2011, defendant filed this motion to suppress, arguing that Puhak lacked probable cause to justify the traffic stop and that the officer's actions exceeded the scope of that stop. After the government responded in opposition, defendant's motion was referred to the

magistrate judge, who presided over an evidentiary hearing on April 7, 2011. At the hearing, defendant was present with counsel, and Puhak testified. A video recording of the traffic stop and the 9-millimeter pistol discovered during the search of the vehicle were admitted into evidence. Defendant did not present any evidence.

The magistrate judge allowed the parties to submit supplemental briefing following the evidentiary hearing. After considering this additional briefing, which raised issues not present in defendant's original motion to suppress, the magistrate judge entered his M&R on July 19, 2011. The magistrate judge concluded (1) that the traffic stop was based upon probable cause that defendant had violated N.C. Gen. Stat. § 20-152, which provides that the driver of a motor vehicle shall not follow another vehicle "more closely than is reasonable and prudent;" (2) that Puhak did not exceed the proper scope of the traffic stop by reaching through the open passenger window to seize a marijuana blunt in plain view; and (3) that defendant had put forward no evidence that the traffic stop was racially motivated. Accordingly, the magistrate judge recommended denying defendant's suppression motion.

Defendant objected to the magistrate judge's recommendation on August 1, 2011, arguing that there are three errors in the magistrate judge's analysis. First, defendant argues that the magistrate judge did not properly apply an objective standard to the plain view doctrine. Second, defendant claims that the magistrate judge erred in concluding that Puhak need not have "do[ne] anything to verify his subjective belief regarding the contents of the object he observed before reaching into the vehicle to grab it . . . ." Obj. at 3. Finally, defendant argues that Puhak failed to preserve the marijuana, asserting bad faith spoilation of material evidence. On August 7, 2011, the government filed a response urging the court to adopt the M&R.

2

Case 4:11-cr-00004-BR   Document 41   Filed 08/17/11   Page 2 of 11

## STATEMENT OF THE FACTS

The court adopts the magistrate judge's credibility determination and findings of fact, to which no party has objected. These facts are set forth in relevant part as follows.

> At all times relevant to defendant's motion, Puhak was an officer with the Roanoke Rapids Police Department and was assigned to the Advanced Criminal Enforcement Unit. On 6 April 2009, Puhak was patrolling a portion of Interstate 95 ("I-95") within the city limits of Roanoke Rapids, North Carolina in a marked patrol car. The ground was damp from an earlier rain. At approximately 12:35 p.m., Puhak was parked on the side of I-95 monitoring northbound traffic. Puhak observed a black Cadillac Escalade SUV ("SUV") traveling in the left lane make a sudden change into the right lane and begin following a smaller SUV closely, at a distance of approximately one and a half car lengths. Puhak was trained that the proper following distance is approximately one car length for every ten miles per hour of speed. Puhak also had an agreement with his partner in his patrol unit that this was the measure that would be used to determine whether a driver was violating the prohibition against following at an unsafe distance.
>
> On the basis of these observations, Puhak began a pursuit of the SUV. As he was trained to do, Puhak pulled up alongside the SUV in the left lane to gather additional information for his investigation and for safety reasons before initiating a traffic stop. Specifically, Puhak performs this additional observation to determine how many occupants are in the vehicle, whether they are wearing their seat belts, and, in the event that the vehicle attempts to flee, whether any children are present. Because the SUV's tinted windows prevented Puhak from seeing into the back passenger area of the vehicle, he was able to observe only the driver.
>
> Puhak estimated that the SUV was travelling at 70 miles per hour. He made this estimate by pacing the SUV – that is, matching the SUV's speed and then reading the speed off his own speedometer.
>
> While Puhak's patrol car was beside the SUV, Puhak observed the driver slouched behind the "B pillar," which is the portion of the car adjacent to the window to which the seat is mounted. The driver did not make eye contact with Puhak. Puhak then slowed his vehicle so that he could see the rear of the SUV to run its registration. At this point, Puhak decided that he would stop the SUV for the violation of following another vehicle too closely.
>
> As Puhak traveled in the left lane with the SUV ahead of him in the right lane, the SUV moved from the right lane to the left lane, pulling in front of Puhak. The SUV came within three quarters of a car length behind the vehicle it was following in the

3

right lane before moving into the left lane. The SUV then passed the vehicle it had been following, moved back into the right lane, and exited the interstate. The exit taken by the SUV was the first exit available after Puhak began following the SUV. Puhak, following the SUV, initiated the traffic stop on the exit ramp, and the SUV pulled off on to the side of the road on the ramp.

After stopping the SUV, Puhak exited his patrol car and approached the vehicle on the passenger's side. As he approached, he visually scanned the interior of the vehicle and observed an infant in the center of the back seat in an infant car seat. Puhak then approached the passenger door and scanned the interior of the vehicle as he introduced himself to the driver, defendant. Puhak's introduction was interrupted by defendant's constant chatter, and Puhak noted that defendant was overly friendly. As he was speaking with defendant, Puhak observed what he believed to be a marijuana "blunt," or a cigar rolled with a tobacco leaf wrapping that contains marijuana instead of tobacco, resting unobstructed from view on the center console to the right of the driver's seat. While continuing his conversation with defendant, Puhak reached into the vehicle, picked up the blunt, observed it, and placed it behind his ear. He then asked defendant to step out of the vehicle. As Puhak was walking around the back of defendant's vehicle to meet defendant on the driver's side, Puhak stopped in front of his patrol car and placed the blunt on the hood in front of the video camera in his patrol car, which was recording the stop.

Puhak then approached the driver's side of the SUV and waited for defendant to exit. Immediately after he got out of the vehicle, defendant re-entered the vehicle through the driver's side rear door and went into the back seat where his infant daughter was seated. Puhak then observed defendant rummaging around the infant car seat. Although Puhak generally does not allow a person to go back into a vehicle for safety reasons, he was trying to be accommodating to defendant's need to tend to his daughter. Because Puhak was unable to adequately observe defendant's actions from outside of the vehicle, Puhak repositioned himself so that he could observe defendant through the open front driver's side door. Defendant then handed the infant car seat containing the child to Puhak through the space over the console between the driver and the passenger seat. Puhak took the child out through the front driver's side door and, as Puhak was trying to find a secure place to put the infant, defendant handed Puhak the base of the infant car seat which defendant also had removed from the SUV. Puhak then placed the infant car seat and the base on the ground next to the front of the patrol car on the passenger's side.

After securing the infant, Puhak noticed that defendant had gone back into the vehicle. Defendant then exited the vehicle and walked toward the back of it while appearing to "frisk" himself. Defendant continued walking around the back of the vehicle to the passenger's side of the vehicle, "dug around in his waistband and pockets," and entered the rear passenger's side door. At this point, Puhak directed

4

defendant to return to the back of the vehicle where Puhak performed a search of defendant's person. During the search, Puhak discovered $2,300.00 in cash in defendant's left pants pocket and $50.00 in cash and a "blunt splitter" in his right pants pocket. A "blunt splitter" is a tool containing a razor which is used to split the paper of a cigar so that the tobacco can be removed and replaced with marijuana or other narcotics.

Puhak seized the items found in the search, placed defendant in handcuffs, and waited for back-up officers to arrive. Following the arrival of back-up, Puhak placed the infant and car seat into the back seat of his patrol car. As he did so, he noticed that she smelled like raw marijuana. Puhak then inspected the infant car seat to determine if marijuana was concealed somewhere in it.

Puhak then searched defendant's vehicle. During the search, he found a loaded, 9 millimeter semi-automatic pistol tucked into a crease in the seat beneath the area where the infant car seat had been. Puhak also found a box of plastic sandwich bags and a can of "blunt spray," which is a highly concentrated air freshener often used by narcotics traffickers to deter law enforcement officers or drug sniffing canines from the odor of narcotics.

After completing the search of the SUV and discussing the investigation with other officers at the scene, Puhak entered his vehicle with defendant in it and advised defendant of his Miranda rights. Puhak then drove defendant to the police department. During the drive, defendant admitted that the marijuana blunt was his, but denied knowledge and possession of the gun.

M&R at 2-6 (citations and internal subheadings omitted).

## DISCUSSION

A. Standard of Review

The district court reviews *de novo* those portions of a magistrate judge's M&R to which specific objections are filed. 28 U.S.C. § 636(b). The court does not perform a *de novo* review of those portions to which a party makes only "general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations." Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982). Absent a specific and timely filed objection, the court reviews only for "clear error," and need not give any explanation for adopting the reasoning and

recommendation of the magistrate judge. Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005); Camby v. Davis, 718 F.2d 198, 200 (4th Cir.1983). Upon careful review of the record, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C).

B. Analysis

Defendant wisely does not persist in his arguments that Puhak lacked probable cause to initiate the traffic stop or that he was motivated to do so based upon defendant's race. The court readily determines that the magistrate judge, applying Whren v. United States, 517 U.S. 806 (1996) and United States v. Hassan El, 5 F.3d 726 (4th Cir. 1993), did not clearly err in concluding that the traffic stop was based upon probable cause that defendant, who was following another vehicle at a distance of approximately one-and-a-half car lengths while traveling approximately 70 miles per hour, had violated the North Carolina law prohibiting a driver from following another vehicle more closely than is reasonable and prudent.[1] Similarly, the court finds no fault with the magistrate judge's conclusion that defendant failed to meet the "rigorous" standard established by the Fourth Circuit for proving the type of racial profiling claim sought to be asserted. See, e.g., United States v. Bullock, 94 F.3d 896, 899 (4th Cir. 1996).

Defendant continues, however, to argue that Puhak's seizure of the marijuana blunt during the course of the traffic stop was not justified under the Fourth Amendment. He contends that it would not have been "objectively" apparent that the cigar-like objet on the center console contained

---

[1] In United States v. Flores-Duran, No. 7:10-CR-95-FL-1, 2011 WL 780592, at *3-4 (E.D.N.C. Feb. 3, 2011) (Daniel, M.J.), recommendation adopted by 2011 WL 780172 (E.D.N.C. Feb. 28, 2011), the court concluded that a law enforcement officer had probable cause to initiate a traffic stop for violation of an identical South Carolina law because the officer reasonably concluded, based upon a rule of thumb that one additional car length's following distance is required for each ten miles per hour a car is traveling, that "a vehicle which was no more than one car length behind another while traveling 70 miles per hour on I-95 was not observing a 'reasonable and prudent' following distance."

marijuana, and that Puhak's subjective belief that the object was a marijuana blunt is insufficient to permit its seizure. Defendant also argues that Puhak's failure to employ readily available and less-intrusive means of verifying his subjective belief, such as asking defendant whether the cigar contained marijuana, implicates the Fourth Amendment.

"As a general rule, warrantless searches or seizures are per se unreasonable." United States v. Williams, 592 F.3d 511, 521 (4th Cir. 2010). Nevertheless, "law enforcement officers may seize evidence in plain view, provided that they have not violated the Fourth Amendment in arriving at the spot from which the observation of the evidence is made." Kentucky v. King, 563 U.S. ___, 131 S. Ct. 1849, 1858 (2011) (citing Horton v. California, 496 U.S. 128, 136-40 (1990)). Under this "plain view" exception to the warrant requirement,

> if police are lawfully in a position from which they view an object, if its incriminating character is immediately apparent, and if the officers have a lawful right of access to the object, they may seize it without a warrant. If, however, the police lack probable cause to believe that an object in plain view is contraband without conducting some further search of the object — i.e., if its incriminating character is not immediately apparent, — the plain-view doctrine cannot justify its seizure.

Minnesota v. Dickerson, 508 U.S. 366, 375 (1993) (internal citations, quotation marks, and alterations omitted).[2]

There can be no doubt in this case that Puhak, standing outside defendant's vehicle during a traffic stop initiated based upon probable cause, was lawfully in a position to view the marijuana blunt and had a lawful right of access to it. See, e.g., United States v. Gillon, 348 F.3d 755, 759 (8th

---

[2] The magistrate judge stated that the government must show that the evidence is discovered inadvertently. However, the Fourth Circuit recently noted that the Supreme Court has dispensed with this requirement, affirming that even though "inadvertence" is characteristic of many plain view seizures, it is not a requirement that needs to be demonstrated by the government. See Williams, 592 F.3d at 523 n.3 (citing Horton, 496 U.S. at 130). The magistrate judge's contrary statement of the law has no effect on the outcome of this case, as the parties conceded that Puhak's discovery of the marijuana blunt was inadvertent.

7

Cir. 2003) ("[O]nce officers [engaged in a traffic stop] viewed what appeared to be bags containing crack cocaine they had a right of access to the passenger compartment [to seize the contraband]."); see also United States v. Davis, No. 10-5001, 2011 WL 1691832, at *1 (4th Cir. May 5, 2011) (unpublished) (holding that officers conducting a traffic stop were justified in seizing a firearm inside the stopped vehicle after one of them noticed the grip of the firearm "protruding from underneath the driver's side floor mat as the officer looked into the vehicle"). The only question raised by defendant appears to be whether the incriminating character of the marijuana blunt was "immediately apparent."

The requirement that an object's contraband status be "immediately apparent" requires officers to have "probable cause to believe that an object in plain view is contraband without conducting some further search of the object." Dickerson, 508 U.S. at 375; see also United States v. Johnson, 107 F. App'x 322, 328 (4th Cir. 2004) (unpublished). Probable cause is "a fluid concept[] that takes [its] substantive content from the particular contexts in which the standard[] [is] being assessed." Ornelas v. United States, 517 U.S. 690, 696 (1996). It exists when "facts available to the officer would warrant a man of reasonable caution in the belief that certain items may be contraband or stolen property or useful as evidence of a crime." Texas v. Brown, 460 U.S. 730, 742 (1983) (internal citations and quotation marks omitted). "A 'practical, nontechnical' probability that incriminating evidence is involved is all that is required." Id.

Here, Puhak testified that he noticed defendant acting in a way that Puhak identified as suspicious based on his training, including leaning against the "B pillar" and failing to make eye contact with Puhak while driving, exiting the highway at the next opportunity after viewing the officer, and exhibiting overly friendly mannerisms during the initial conversation following the

8

Case 4:11-cr-00004-BR   Document 41   Filed 08/17/11   Page 8 of 11

initiation of the traffic stop. During this conversation, Puhak noticed an object that he immediately identified as a marijuana blunt on the center console. Puhak testified that he could distinguish a marijuana blunt from a factory-made cigar because the former is generally lumpy and uneven, as opposed to uniform in appearance. Puhak further testified that he had been trained to recognize the appearance of a marijuana blunt and had seen marijuana blunts many times, that he was a cigar smoker himself, and that "a blunt looks different from a cigar."

Based on these facts, and upon *de novo* review, the court agrees with the magistrate judge that Puhak had probable cause to believe that the object he observed from his vantage point outside the passenger window of defendant's vehicle was a marijuana blunt. Although defendant argues that the object *could have been* a hand-rolled or "rumpled" cigar containing no contraband, "probable cause does not require absolute certainty." See United States v. Gary, 528 F.3d 324, 327 (4th Cir. 2008). The uneven appearance of the cigar and defendant's suspicious behavior reasonably led Puhak to believe, based on his training and experiences, that the cigar-like object was probably contraband.[3] Cf. Brown, 460 U.S. at 742-43 (upholding seizure of balloon containing narcotics even though the officer "could not see through the opaque fabric of the balloon").

The court also finds defendant's suggestion that Puhak failed to "verify his subjective belief" that the object contained marijuana to be without merit. Puhak had more than a mere "subjective belief" that the object was a marijuana blunt. Instead, Puhak had probable cause to believe the object was a marijuana blunt based upon objective facts such as its appearance and

---

[3] As noted by defendant, probable cause in the plain view context, as in other contexts, is determined under an objective standard rather than by the officer's subjective state of mind. See, e.g., Horton, 496 U.S. at 138; United States v. Sanchez, 612 F.3d 1, 5 (1st Cir. 2010). But although "[t]he standard for whether probable cause exists is an objective one[,] . . . a police officer may draw inferences based on his own experiences in deciding whether probable cause exists, including inferences that might well elude an untrained person." United States v. Johnson, 599 F.3d 339, 346 (4th Cir. 2010) (internal quotation marks and citation omitted).

defendant's suspicious conduct. Despite defendant's suggestion that Puhak should have "ask[ed] [defendant] whether the object contained marijuana or tobacco," see Obj. at 3-4, Puhak did not need *proof* that the object was a marijuana blunt to seize it; he needed only a "fair probability" that it was contraband. See Illinois v. Gates, 462 U.S. 213, 238 (1983); see also Brown, 460 U.S. at 742 ("[Probable cause] does not demand any showing that [the officer's] belief be correct or more likely true than false").

In addition to arguing that Puhak needed proof that the object was contraband prior to seizing it, defendant suggests that he was required to "diligently" investigate the item to "confirm or dispel [his] suspicions quickly." See Obj. at 3 (quoting United States v. Sharpe, 470 U.S. 675, 686 (1985)). This requirement, which comes from the investigative stop context, based upon reasonable suspicion, has no place in the court's probable cause analysis in this case. See United States v. Manbeck, 744 F.2d 360, 375 & n.19 (4th Cir. 1984) (finding "[d]efendants' reliance on Sharpe misplaced" where officers had probable cause to detain an individual). But even if Puhak had been required somehow to confirm his belief that the object contained contraband before searching the car, he testified to seeing marijuana – "a green vegetable matter" – inside the blunt immediately after seizing it. See Tr. at 75:1-8. This is confirmation enough.[4]

Finally, the court briefly addresses defendant's argument that the officer did not preserve the marijuana blunt, and that this failure to preserve evidence constitutes grounds for suppression under the Due Process Clause. "[U]nless a criminal defendant can show bad faith on the part of the

---

[4] Defendant does not challenge the magistrate judge's plainly correct conclusion that, upon establishing probable cause to believe defendant was in possession of even a small amount of marijuana, a misdemeanor offense under North Carolina law, see N.C. Gen. Stat. § 90-95(d)(4), Puhak was entitled to search the vehicle, see Pennsylvania v. Labron, 518 U.S. 938, 940 (1996), and to arrest defendant and search his person, see Atwater v. City of Lago Vista, 532 U.S. 318, 354 (2001); United States v. Robinson, 414 U.S. 218, 235-36 (1973).

10

police, failure to preserve potentially useful evidence does not constitute denial of due process of law." Arizona v. Youngblood, 488 U.S. 51, 58 (1988). In this case, it is not even clear that Puhak failed to preserve the evidence in question, as neither the government nor defendant asked him about any subsequent testing or preservation of the marijuana. Even assuming that the marijuana blunt no longer exists, defendant has put forward no evidence suggesting that it was destroyed by the government in bad faith. See United States v. Webster, 625 F.3d 439, 447 (8th Cir. 2010) ("[T]he burden of demonstrating bad faith on the part of the government resides with the defendant."); accord United States v. Marshall, 109 F.3d 94, 98 (1st Cir. 1997); United States v. Caicedo-Llanos, 960 F.2d 158, 161 (D.C. Cir. 1992). Defendant's due process claim based on Youngblood is without merit.

## CONCLUSION

Upon *de novo* review of those portions of the M&R to which specific objections have been filed, and upon considered review of those portions to which no objection has been made, the court ADOPTS as its own the findings and recommendations of the magistrate judge (DE # 38). For the reasons given above, defendant's motion to suppress (DE # 20) is DENIED.

SO ORDERED, this the ___ day of August, 2011.

LOUISE W. FLANAGAN
Chief United States District Judge